# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY GHAFFARI, | : |
| Plaintiff, | : |
| v. | : 3:13-CV-2988 |
| | : (JUDGE MARIANI) |
| WELLS FARGO BANK, N.A., et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. Introduction

*Pro se* Plaintiff Anthony Ghaffari (Ghaffari) initiated this action in the District Court for the District of Columbia (D.C. Court) against the Federal Home Loan Mortgage Association (Freddie Mac), Wells Fargo Bank, N.A. (Wells Fargo), and Phelan Hallinan, LLP (Phelan). (Doc. 1). After the D.C. Court granted Phelan's Motion to Dismiss (Docs. 13-14) and Ghaffari voluntarily dismissed all claims against Freddie Mac (Doc. 48), Wells Fargo was the only remaining defendant. Wells Fargo filed a Motion to Dismiss (Doc. 25), and Ghaffari responded with an "Amended Complaint in lieu of Opposition to Defendants' Motion to Dismiss." (Doc. 42). The Amended Complaint alleges Wells Fargo violated the 2012 National Mortgage Consent Judgment entered into between the Government and Wells Fargo (Consent Judgment), *United States v. Bank of Am. Corp., et al.*, No. 1:12-cv-361-RMC (D.D.C. 2012), as Count I; the National Housing Act (NHA), 12 U.S.C. § 1701, *et seq.*, as Count II; a pooling and servicing agreement (PSA) titled "Wells Fargo Mortgage Backed

Securities 2007-6 trust" as Count III; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq., as Count IV; the "Office of the Comptroller of the Currency Consent Agreement #2013-132 Which Amends #2011-051" entered into between the Comptroller of the Currency and Wells Fargo (OCC Consent Agreement) as Count V; and the Equal Credit Opportunity Act (ECOA),15 U.S.C. § 1691, et seq., as Count VI.

Wells Fargo moved to dismiss the Amended Complaint (Doc. 45), and the D.C. Court granted the Motion in part. (Doc. 51). The D.C. Court dismissed Count I "on the ground that Plaintiff lacks standing to sue for violations of the Consent Agreement." (D.C. Court Mem. Opp., Doc. 52, at 1). After dismissing Count I, the D.C. Court held that "venue is no longer proper here since its only basis was this Court's original jurisdiction over all claims relating to the Consent Judgment." (Id.). As a result, the D.C. Court "transfer[ed] the remainder of the case to the Middle District of Pennsylvania." (Id.).

Wells Fargo now moves to dismiss Ghaffari's remaining claims, Counts II-VI. (Doc. 63). Wells Fargo filed Briefs (Docs. 64, 68) in support of its Motion. Plaintiff filed "Plaintiff's Opposition to Defendants' Resubmitted Motion to Dismiss Amended Complaint." (Doc. 67).[1] For the reasons that follow, the Court will grant Wells Fargo's Motion to Dismiss and will dismiss Counts II-VI with prejudice.

---

[1] In contravention of Local Rule 7.6, Ghaffari did not file a Brief in Opposition to Wells Fargo's Motion to Dismiss. Instead, Ghaffari sought, in violation of Local Rule 7.8(a), to incorporate by reference the Brief in Opposition he filed in the D.C. Court. (Doc. 67). On October 2, 2014, the Court issued an Order (Doc. 75) stating, "Given Ghaffari's pro se status, the Court will accept the Brief in Opposition filed in the District of Columbia Court (Doc. 49) as his Brief in Opposition to Wells Fargo's pending Motion to Dismiss (Doc. 63)."

2

## II. Factual Allegations

This suit stems from a mortgage foreclosure action filed by Wells Fargo on May 4, 2012 in the Pennsylvania Court of Common Pleas of Centre County. (Am. Compl. at ¶ 23). Plaintiff obtained a mortgage on his State College, Pennsylvania home on October 13, 1999. (Ex. A to Ex. C of Am. Compl., Doc. 42-1). On April 6, 2007, his mortgage was assigned to Wells Fargo, at which point Wells Fargo became the servicer of Ghaffari's mortgage loan. (See Am. Compl. at ¶ 14; Ex. B to Ex. C of Am. Compl.). On December 4, 2011, Wells Fargo sent Ghaffari a letter indicating that he had not paid his monthly mortgage payments since October 1, 2011. (Ex. D to Ex. C of Am. Compl.). By January 1, 2012, Ghaffari was three payments behind on his mortgage. (Am. Compl. at ¶ 13).

Plaintiff contacted Wells Fargo on January 15, 2012 requesting a loan modification. (Id. at ¶ 14). Between January 15, 2012 and March 1, 2012, Wells Fargo requested information from Ghaffari, and he complied. (Id. at ¶ 15). On March 16, 2012, Wells Fargo told Ghaffari that he was ineligible for a loan modification. (Id. at ¶ 16). Despite this, a Wells Fargo representative "agreed to discuss additional options on" March 19, 2012. (Id.).

Ghaffari attempted to contact the representative throughout the week of March 19, 2012 but was unable to reach her. (Id.). On March 23, 2012, Ghaffari spoke with a Wells Fargo supervisor. (Id.). The supervisor told Ghaffari that Wells Fargo had retained counsel to initiate foreclosure proceedings and that, as a result, it was no longer possible for Wells Fargo to pursue potential loan modification options. (Id.).

### III. <u>Standard of Review</u>

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should

4

identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal citations, alterations, and quotation marks omitted). This "plausibility" determination will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. In addition to the well-pleaded facts, the Court may consider "exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, --- F.3d ----, 2014 WL 5303002, at *4 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## VI. Analysis[2]

### A. National Housing Act – Count II

In Count II, Ghaffari alleges Wells Fargo violated 12 U.S.C. § 1701x(c)(5)[3] by failing to advise him of the availability of homeownership counseling. (Am. Compl. at ¶¶ 42-45). Wells Fargo argues that Count II should to be dismissed because the NHA does not provide

---

[2] Because the D.C. Court dismissed Count I (Doc. 51), this Court shall only discuss Counts II-VI.
[3] The Amended Complaint alleges Wells Fargo violated "12 U.S.C. 1701(c)(5)." (Doc. 42 at ¶ 43). However, no 12 U.S.C. § 1701(c)(5) exists. Given the substance of the allegations in Count II, it appears Ghaffari intends to bring a claim under 12 U.S.C. § 1701x(c)(5).

5

a private right of action. (Br. in Supp., Doc. 64, at 5). Neither the Third Circuit nor any other Court of Appeals has addressed whether § 1701x(c)(5) creates a private right of action. No District Court within the Third Circuit has discussed this issue.

However, District Courts across the country have held that no private right action exists under § 1701x(c)(5). *See, e.g., Castrillo v. Am. Home Mortg. Serv., Inc.*, 670 F. Supp. 2d 516, 526 (E.D. La. 2009) (collecting cases); *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *10 (C.D. Cal. 2009) (finding "no indication of an intent to create a private right of action in 12 U.S.C. § 1701x(c)(5)"); *Solomon v. PNC Mortg. Co.*, 2013 WL 4461538, at *4 (E.D.N.C. 2013); *Deutsche Bank Nat. Trust Co. v. Quarles*, 2013 WL 3863969, at *4 (E.D. Mich. 2013); *Coley v. Accredited Home Lenders, Inc.*, 2011 WL 1193072, at *2 (E.D. Ark. 2011). Moreover, courts have held that the NHA more generally does not create a private right of action. *See, e.g., In re Miller*, 124 F. App'x 152, 155 (4th Cir. 2005); *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1046-47 (9th Cir. 1979); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758-59 (5th Cir. 1987); *Falzarano v. United States*, 607 F.2d 506, 508-09 (1st Cir. 1979); *Goss v. Fairfield Hous. Auth.*, 2006 WL 1272623, at *3 (D. Conn. 2006).

In ascertaining whether a particular federal law creates a private right of action, the Court must ask two questions: "(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy? Only if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a

federal statute." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007); *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004) ("Put succinctly, for an implied right of action to exist, a statute must manifest Congress's intent to create (1) a personal right, and (2) a private remedy.").[4]

"In determining whether a private right of action exists under 12 U.S.C. § 1701x(c)(5), the Court must look for 'rights-creating language' in the text of the statute." *Rozier v. CitiMortgage, Inc.*, 2011 WL 2634154, at *3 (E.D. Va. 2011) (citing *Alexander v. Sandoval*, 532 U.S. 275, 288, 121 S. Ct. 1511, 1521, 149 L. Ed. 2d 517 (2001)). No such rights-creating language is present in 12 U.S.C. § 1701x(c)(5). Section 1701x(c)(5) "requires creditors to notify homeowners who fall behind on their mortgage loans of the availability of any homeownership counseling offered by the creditor." *Castrillo*, 670 F. Supp. 2d at 526 (E.D. La. 2009) (citing § 1701x(c)(5)(A)(i), (ii)(I)). It also requires creditors to notify homeowners of counseling "provided by nonprofit organizations approved by the Secretary" of Housing and Urban Development (HUD Secretary). § 1701x(c)(5)(A)(ii)(III). Section 1701x(c)(5)(D)(ii) provides that the HUD Secretary "shall monitor the compliance of creditors with the requirements of subparagraphs (A) and (B)." Finally, the NHA states that the HUD Secretary "shall submit a report to the Congress not less than annually regarding

---

[4] "[O]ver the past fifty years, the Supreme Court has substantially modified its test for determining whether a federal statute provides an implied private right of action." *Wisniewski*, 510 F.3d at 297. At one point, the inquiry was governed by the four-factor test set forth in *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975). "Although *Cort* has never been formally overruled, subsequent decisions have altered it virtually beyond recognition." *Wisniewski*, 510 F.3d at 299.

the extent of compliance of creditors with the requirements of subparagraphs (A) and (B) and the effectiveness of the entity monitoring such compliance." § 1701x(c)(5)(E).

Thus, there is nothing in the text of statute that expresses an intent on the part of Congress to create a private right of action by enacting § 1701x(c)(5). *See Rozier*, 2011 WL 2634154, at *3 ("It is evident from the text of the statute that Congress, therefore, did not intend to create a private right of action by enacting § 1701x."); *Mitchell v. Chase Home Fin. LLC*, 2008 WL 623395, at *3 (N.D. Tex. 2008) ("[T]he regulations promulgated under the National Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations."). Ghaffari cites no contrary authority. Indeed, Ghaffari notes in his Brief that it "may be true" that the NHA does not provide a private right of action. (Br. in Opp., Doc. 49, at 11).

Therefore, the Court will dismiss Count II with prejudice.

### B. Pooling and Servicing Agreement – Count III

In Count III, Ghaffari alleges Wells Fargo violated a PSA entitled "Wells Fargo Mortgage Backed Securities 2007-6 Trust[.]" (Am. Compl. at ¶ 47).[5] Wells Fargo argues that

---

[5] The United States Bankruptcy Court for the Eastern District of Pennsylvania provides the following summary of how pooling and servicing agreements operate:

> A pooling and servicing agreement is an agreement creating a trust that defines the terms under which promissory notes and their related mortgages are placed into the trust, describes how the notes and mortgages and related loan documents are transferred by and between the parties to the trust, and sets forth the various responsibilities of the parties to the trust. The promissory notes, mortgages or deeds of trust, and related loan

8

Count III should be dismissed since Ghaffari does not allege that Wells Fargo violated the PSA and since he lacks standing to enforce it. (Br. in Supp. at 6). According to the Amended Complaint, the trustee of the PSA was "HSBC Bank, USA, National Association," and Wells Fargo was the servicer. (Am. Compl. at ¶ 48).

Plaintiff does not provide the Court with a copy of the PSA or cite any provision of it in his Amended Complaint. Ghaffari does not allege that he is a party to the PSA. Nor does he allege facts that would indicate that he has a right to enforce it. Further, the Amended Complaint does not state how Wells Fargo allegedly violated the PSA. In his Brief in Opposition, Ghaffari argues that Wells Fargo violated the PSA because Wells Fargo was not assigned his mortgage until after the closing date of the PSA. (Doc. 49 at 11-12). The Amended Complaint states that the alleged violation of the PSA was "an actionable event that voids the assignment of the note and denies Defendant's ability to carry out this foreclosure." (Doc. 42 at ¶ 47). Thus, Count III essentially amounts to a challenge of the validity of the mortgage assignment to Wells Fargo. *See Souders v. Bank of Am.*, 2012 WL

---

documents are the trust res. Through the securitization process, the beneficial or ownership interests in the trust are held by investors.

\* \* \*

A PSA also provides for the transfer of the mortgage loans to encompass various documents including the original note, original mortgage, original or certified copies of guaranties, mortgage assignments and other relevant documents. . . . Generally, the PSA provides that if certain documents are not in proper order after review by the Trustee of the Securitization Trust, the responsible party could be required to repurchase a mortgage loan.

*In re Walker*, 466 B.R. 271, 275 n.6 (Bankr. E.D. Pa. 2012) (citation and brackets omitted).

7009007, at *9-11 (M.D. Pa. 2012) *report and recommendation adopted*, 2013 WL 451863 (M.D. Pa. 2013) (characterizing and analyzing a *pro se* borrower's claim that defendants assigned her mortgage into a PSA after its closing date as "essentially challeng[ing] the validity of a Mortgage Assignment").

However, Ghaffari lacks standing to challenge the validity of the assignment. Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). In order to have standing under Article III of the Constitution, the Third Circuit has held that "a plaintiff must establish that he or she has suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Doe ex rel. v. Lower Merion School Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Therefore, to establish standing to challenge the mortgage assignment, Ghaffari must demonstrate that he has suffered or will suffer an "injury in fact." *See In re Walker*, 466 B.R. at 285-86 ("If a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue.").

Under Pennsylvania law, one "does not have standing to sue for breach of contract unless [he] is a party to the contract or [he] is an intended third-party beneficiary." *Developers Sur. & Indem. Co. v. Mathias*, 2013 WL 6504751, at *4 (M.D. Pa. 2013) (citing

*Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147, 149 (Pa. 1992)). There are two tests to determine whether one is an intended third-party beneficiary. *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp. 2d 432, 450 (M.D. Pa. 2000).

> The first one requires that the parties to the agreement indicate in the agreement itself that the purported beneficiary is a third party beneficiary. The second test does not require that the purported beneficiary be mentioned in the contract but imposes two requirements. First, the circumstances must be so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties. Second, (1) the performance satisfies an obligation of the promisee to pay money to the beneficiary or (2) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.*

Here, Ghaffari does not allege that he is a party to the mortgage assignment, nor does the mortgage assignment state that he is a party or an intended third-party beneficiary of the assignment. (*See* Ex. B to Ex. C of Am. Compl.). The mortgage assignment, dated April 6, 2007, states in its entirety:

### ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, SUCCESSOR BY MERGER TO WASHINGTON MUTUAL HOME LOANS INC., F/K/A PNC MORTGAGE CORP. OF AMERICA, F/K/A SEARS MORTGAGE CORPORATION, F/K/A ALLSTATE ENTERPRISES MORTGAGE CORPORATION, WHOSE ADDRESS IS 2210 ENTERPRISE DRIVE, FLORENCE, SC 29501 (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described herein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **WELLS FARGO BANK, NA, WHOSE ADDRESS IS 1 HOME CAMPUS, DES MOINES, IA 50328, ITS**

11

> **SUCCESSORS OR ASSIGNS, (ASSIGNEE)**, said mortgage dated 10/13/1999, in the amount of $171,000.00 made by **ANTHONY H. GHAFFARI** to **PNC MORTGAGE CORP. OF AMERICA** recorded on 10/19/1999, in the Office of the Recorder of Deeds of CENTRE County Pennsylvania, in Book 1120, Page 1076 (or Document No. 001011)[.]
>
> Mortgage Premise: 1317 SANDPIPER DR. | BORO OF STATE COLLEGE
>    STATE COLLEGE, PA 16801
>
> In Witness whereof, the said Corporation has caused this instrument to be executed in its corporate name by BRYAN BLY its ASST VICE PRESIDENT and authorized signer, THIS 06TH DAY OF APRIL IN THE YEAR 2007 **WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, SUCCESSOR BY MERGER TO WASHINGTON MUTUAL HOME LOANS INC., F/K/A PNC MORTGAGE CORP. OF AMERICA, F/K/A SEARS MORTGAGE CORPORATION, F/K/A ALLSTATE ENTERPRISES MORTGAGE CORPORATION**
>
> **BY: _____**
> **BRYAN BLY ASST. VICE PRESIDENT**

(*Id.*) (emphasis in original).

Further, none of the facts alleged indicate that recognizing Ghaffari as a third-party beneficiary would be consistent with intentions of the parties to the mortgage assignment. *See Two Rivers*, 96 F. Supp. 2d at 450. The assignment conveys "all interest secured [by the mortgage], all liens, and any rights due or to become due thereon to Wells Fargo[.]" (Ex. B to Ex. C of Am. Compl.). There is nothing to suggest that the parties intended for the assignment to in any way benefit Ghaffari. Thus, Ghaffari is not an intended third-party beneficiary of the mortgage assignment.

Since Ghaffari is neither a party to nor an intended third-party beneficiary of the mortgage assignment, he lacks standing to challenge its validity. *See Souders*, 2012 WL

12

7009007, at *10-11 (finding a *pro se* borrower lacked standing to challenge a mortgage assignment since she was neither a party nor third-party beneficiary to the assignment); *Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 480 (6th Cir. 2014) ("Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement provisions, based on borrowers' lack of standing."); *In re Washington*, 469 B.R. 587, 590 (Bankr. W.D. Pa. 2012) ("Federal courts have rejected claims brought by debtors who challenge compliance with procedures in Pooling and Servicing Agreements to which they are neither a party, nor a third party beneficiary, for lack of standing."); *In re Correia*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011).

In accordance with the case law discussed above, Ghaffari lacks standing to challenge either the PSA or the mortgage assignment. Therefore, the Court will dismiss Count III with prejudice.

### C. Fair Debt Collection Practices Act – Count IV

Wells Fargo argues that Count IV should be dismissed because it was not a debt collector as defined by the FDCPA. (Br. in Supp. at 8). "The FDCPA's provisions generally apply only to debt collectors." *Federal Trade Comm'n v. Check Investors, Inc.*, 502 F.3d 159, 172 (3d Cir. 2007) (quoting *Pollice v. Nat. Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)). As an initial matter, Ghaffari asserts that Wells Fargo was a debt collector since it sent him letters stating that it was a debt collector. (Am. Compl. at ¶ 51). Two cases within

the Third Circuit have held that a "defendant's own statement that it was a debt collector [does] not automatically mean that it was a debt collector for FDCPA purposes." *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, at *5 (D.N.J. 2013) (citing *Siwulec v. Chase Home Fin., LLC*, 2010 WL 5071353, at *4-5 (D.N.J. 2010) (relying on *Nwoke v. Countrywide Home Loans, Inc.*, 251 F. App'x 363 (7th Cir. 2007))). Instead, to be "held liable under the FDCPA," a defendant must "meet the requirements of a debt collector as specifically defined in the Act." *Id.*

The reasoning of *Siwulec* and *Slimm* is persuasive here. Even if Wells Fargo referred to itself as a debt collector in correspondences with Ghaffari,[6] this alone would not mean that Wells Fargo was a debt collector for the purposes of the FDCPA. Rather, the proper inquiry here is whether Wells Fargo was a debtor collector as defined by the FDCPA. The FDCPA defines a debt collector as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . [S]uch term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).

---

[6] Unlike in *Siwulec* and *Slimm*, Ghaffari does not point to any specific correspondence in which Wells Fargo stated it was a debtor collector.

14

The FDCPA explicitly excludes from its definition of a debt collector "any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." § 1692a(6)(F)(iii). "Creditors—as opposed to 'debt-collectors'—generally are not subject to the FDCPA." *Pollice*, 225 F.3d at 403. Similarly, mortgage servicers are ordinarily not debt collectors under the FDCPA and, therefore, not subject to the Act. *Conklin v. Purcell, Krug & Haller*, 2007 WL 404047, at *5 (M.D. Pa. 2007). "While creditors and mortgage servicing companies are generally exempt from the FDCPA, courts have acknowledged a very limited exception for mortgage servicers who began servicing the loan after the mortgagee defaults on the mortgage." *Jobe v. Bank of Am., Nat. Ass'n*, 2011 WL 4738247, at *5 (M.D. Pa. 2011) *report and recommendation adopted sub nom. Jobe v. Bank of Am., N.A.*, 2011 WL 4738225 (M.D. Pa. 2011) (citing *Conklin*, 2007 WL 404047, at *5 (collecting cases)).

Here, Ghaffari does not allege that his mortgage was in default when Wells Fargo began servicing the loan. To the contrary, the allegations in the Amended Complaint indicate that Plaintiff did not default until after Wells Fargo took ownership of the mortgage. The mortgage was assigned to Wells Fargo on April 6, 2007. (Ex. B to Ex. C of Am. Compl.). On December 4, 2011, Wells Fargo sent Plaintiff a letter indicating that he had not paid his monthly mortgage payments since October 1, 2011. (Ex. D to Ex. C of Am. Compl.). By January 1, 2012, Ghaffari had missed three mortgage payments. (Am. Compl. at ¶ 13). There is nothing in the Amended Complaint that indicates that Ghaffari was in

default prior to October 1, 2011. Thus, the Amended Complaint does not allege that Wells Fargo was a debt collector under the FDCPA, see § 1692a(6)(F)(iii), and Ghaffari cannot sustain his FDCPA claim.

In his Brief in Opposition, Ghaffari states that access to discovery would permit him to demonstrate that his mortgage was in default when Wells Fargo acquired it. (Doc. 49 at 12). However, Plaintiff cannot attempt to cure deficiencies in the Amended Complaint through his Brief in Opposition. See Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (quoting Car Carriers, Inc. v. Ford Motor Corp., 745 F.2d 1101, 1107 (7th Cir. 1984) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")). Further, Ghaffari's assertion in his Brief runs contrary to the facts alleged in the Amended Complaint which, as stated above, indicate that Plaintiff was not default until after Wells Fargo acquired his mortgage.

Finally, Plaintiff has had a prior opportunity to amend his complaint to allege that he defaulted on his mortgage prior to Wells Fargo's acquisition of the mortgage by the assignment of the mortgage dated April 6, 2007, but he failed to do so. Instead, Plaintiff chose to allege that he had been notified by Wells Fargo that he had not paid his monthly mortgage payments since October 1, 2011. (Ex. D to Ex. C of Am. Compl.). As a result, the Court will dismiss Count IV without leave to amend.

### D. OCC Consent Agreement – Count V

Wells Fargo argues that Count V should be dismissed since Ghaffari is not a party to the OCC Agreement and does not have standing to enforce it. (Br. in Supp. at 10). The OCC Consent Agreement is a settlement between Wells Fargo and the Comptroller of Currency. (*See* Ex. D of Am. Compl., Doc. 42-1). Consent decrees "are construed according to traditional precepts of contract construction[.]" *Fox v. U.S. Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3d Cir. 1982).

As noted above, one "does not have standing to sue for breach of contract," under Pennsylvania law, "unless [he] is a party to the contract or [he] is an intended third-party beneficiary." *Mathias*, 2013 WL 6504751, at *4. Where a contract "expressly disclaims intent to create third-party beneficiaries[,] . . . Pennsylvania courts ordinarily give effect to such disclaimers[.]" *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 528 & n.95 (E.D. Pa. 2011) (collecting cases). Here, Ghaffari does not allege that he is a party to the OCC Consent Agreement, and the Agreement expressly disclaims intent to create third-party beneficiaries. It states:

> Nothing in the Stipulation or this Amendment to the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation or this Amendment to the Consent Order.

(Amendment to Consent Order, Ex. D of Am. Compl., Doc. 42-1, at ¶ VII.8).

Given this disclaimer, Plaintiff cannot contend that he is an intended third-party beneficiary, see Medevac, 817 F. Supp. 2d at 528, and he does not do so. Further, Ghaffari does not allege that he is a successor to a party of the OCC Consent Agreement. Instead, he states that it "may be true" that he cannot enforce the Agreement. (Br. in Opp. at 13). Thus, Plaintiff lacks standing to enforce the OCC Consent Agreement, and the Court will, therefore, dismiss Count V with prejudice.

### E. Equal Credit Opportunity Act – Count VI

In Count VI, Ghaffari alleges Wells Fargo violated 15 U.S.C. § 1691(d) by failing to respond to his application for a loan modification and by failing to explain the basis of the denial. (Am. Compl. at ¶¶ 56-60). Wells Fargo argues that Count VI should be dismissed since the ECOA does not require a creditor to respond to a borrower's request for a loan modification when the borrower is in default at the time of the request. (Br. in Supp. at 11).

The ECOA provides, "Within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." § 1691(d)(1). Section 1691(d)(2) states, "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." However, in its definition of an "adverse action," the ECOA explicitly excludes "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default[.]" § 1691(d)(6).

Here, the Amended Complaint states that by January 1, 2012, Plaintiff had missed three mortgage payments. (Doc. 42 at ¶ 13). On January 15, 2012, Ghaffari contacted Wells Fargo requesting a loan modification. (*Id.* at ¶ 14). Thus, Plaintiff was already in default when he made his requests. As a result, Wells Fargo's alleged failure to respond does not fall within the ECOA's definition of adverse action, and Ghaffari cannot sustain his ECOA claim. *See Casey v. Litton Loan Servicing*, 2012 WL 502886, at *6 (D. Md. 2012) (collecting cases) ("The case law on this matter is clear—a creditor need not provide an adverse action notification when it denies a loan modification request by a delinquent borrower.")); *Bonadio v. PHH Mortgage Corp.*, 2014 WL 522784, at *4-5 (S.D.N.Y. 2014).

Therefore, the Court will dismiss Count VI with prejudice.

## IV. Conclusion

For the foregoing reasons, the Court will grant Wells Fargo's Motion to Dismiss (Doc. 63). Counts II-VI will be **DISMISSED WITH PREJUDICE**. A separate Order follows.

_____
Robert D. Mariani
United States District Judge